FILED

2017 MAY 24 AM 9: 26

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | INFORMATION |
| Plaintiff, ) | CASE NO. 4:17 CR 0181 |
| v. ) | JUDGE |
| MARK GREGORY, ) | Title 18, Sections 1349, 1956(h), United States Code |
| Defendant. ) | |

JUDGE GAUGHAN

The United States Attorney charges:

**General Allegations**

At all times material to this Information:

1. Defendant MARK GREGORY was a resident of Youngstown, Ohio, which was located in the Northern District of Ohio.

2. GREGORY maintained bank accounts at the following financial institutions: Citizens Bank, formerly known as Charter One Bank, which was headquartered in Providence, Rhode Island; JP Morgan Chase ("Chase"), which was headquartered in New York City, New York; and PNC Bank, which was headquartered in Pittsburgh, Pennsylvania.

3. Citizens Bank, Chase, and PNC Bank had branch offices located in the Northern District of Ohio and elsewhere. Any time money was transferred via wire to or from an account at these banks, including to or from accounts opened at its branch offices located in Ohio, to or

from an account at another financial institution, information was transmitted by means of wire communication from the other financial institution to the banks' headquarters.

4.  Citizens Bank, Chase, and PNC Bank were insured by the Federal Deposit Insurance Corporation.

The United States Attorney further charges:

## COUNT 1
(Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1343,
and Bank Fraud, 18 U.S.C. § 1344(2), in violation of 18 U.S.C. § 1349)

5.  The factual allegations of paragraphs 1 through 4 of this Information are realleged and incorporated by reference as if fully set forth herein.

6.  From in or around January 2013, and continuing through approximately December 2016, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant MARK GREGORY, and others known and unknown to the United States Attorney, did knowingly and intentionally combine, conspire, confederate, and agree together and with each other to:

   a. devise and intend to devise a scheme and artifice to defraud law firms, investment firms, other business entities, and individuals who believed they were engaging in legitimate financial transactions, and to obtain money and property from such entities and persons by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme and artifice to defraud cause to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343; and

   b. by means of materially false and fraudulent pretenses, representations, and promises, knowingly execute and attempt to execute a scheme and artifice to obtain any of the moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of a financial institution, in violation of Title 18, United States Code, Section 1344(2).

## Object of the Conspiracy

7. The object of the conspiracy was to enrich MARK GREGORY and his co-conspirators (a) by causing law firms, investment firms, other business entities, and individuals to engage in financial transactions that representatives of the various business entities and individuals thought were legitimate but, in truth and in fact, fraudulently diverted large amounts of money to bank accounts that the co-conspirators had established to receive the diverted funds, and (b) by using financial institutions to obtain the fraudulently diverted money.

## Manner and Means of the Conspiracy

8. The manner and means by which the conspirators sought to accomplish the conspiracy included, among others, the following:

   a. Conspirators used emails, financial wire transfers, and other interstate wire communications to defraud law firms, investment firms, other business entities, and individuals across the United States and obtain funds from them by means of materially false and fraudulent pretenses and representations;

   b. Conspirators, through computer intrusion schemes, dating scams, and otherwise, obtained information relating to their victims' business activities, financial accounts, and financial transactions;

   c. Conspirators incorporated and caused to be incorporated shell companies with fictitious names, sometimes including the victim's name into the shell company name, then opened and caused to be opened bank accounts in the names of those shell companies at various federally-insured financial institutions in the Northern District of Ohio and elsewhere, and provided each other with access to these accounts;

   d. Conspirators opened and caused to be opened bank accounts, in the names of existing business entities they controlled and names similar to their own individual names, at various federally-insured financial institutions in the Northern District of Ohio and elsewhere, and provided each other with access to these accounts;

   e. Conspirators provided each other with access to other preexisting bank accounts they controlled at various federally-insured financial institutions in the Northern District of Ohio and elsewhere;

3

    f.    Conspirators made false representations to financial institution representatives about the purpose for which banks accounts were opened and the source and destination of funds;

    g.    Conspirators used various methods to trick their victims into wiring money, often across state lines, to the bank accounts they controlled, including:

        i.    posing as an account holder at a financial institution and directing personnel at the institution to transfer money out of the account holder's accounts;

        ii.    posing as an employee at a victim business entity and directing personnel at that entity to transfer money via the entity's financial institution;

        iii.    posing as persons with fake investment opportunities and requesting that the victim invest money;

        iv.    providing fake checks to lawyers that the conspirators purported to engage for legal representation, claiming that the checks were settlement and transactional payments, directing the lawyers to deposit those checks in their firms' trust accounts, and then instructing the lawyers to wire money out of those accounts to settle fake claims and transactions;

        v.    posing as persons who had a legitimate interest in a financial transaction and misdirecting the funds at issue;

        vi.    providing fake checks to escrow agents that the conspirators purported to engage, claiming that the checks were earnest money payments to purchase real estate and other large dollar items such as machinery, directing the escrow agents to deposit those checks in their trust accounts, and then instructing the escrow agents to wire money out of those accounts as fake escrow payments;

    h.    Conspirators traveled to bank branches located in different states to conduct transactions in accounts that had received fraudulently obtained funds;

    i.    Conspirators withdrew and caused to be withdrawn portions of the victim money from the bank accounts to which it had been fraudulently transferred and used it to enrich themselves.

**Acts in Furtherance of the Conspiracy**

9. On or about February 25, 2013, conspirators sent an email from rnip234@yahoo.com to ikelo1010@yahoo.ca with the subject line "name for aza[.]" The content of the email contained, among other things, the name of an identity theft victim, S.A. (a real person whose identity is known to the United States Attorney).

10. On or about February 27, 2013, GREGORY opened business checking account ending in #6452 in the name of S.A. at a Citizens Bank branch located in Youngstown, Ohio. After opening the Citizens Bank account ending in #6452, Defendant and Z.H. provided the account information to co-conspirators.

11. On or about February 27, 2013, conspirators sent an email from ikelo1010@yahoo.ca to mchaser205@yahoo.com with the subject line "Sally aza[.]" The content of the email contained account details for the Citizens Bank account ending in #6452.

12. On or about March 8, 2013, GREGORY opened business checking account ending in #1897 in the name of "Mark Gregory S.A." at a Citizens Bank branch located in Youngstown, Ohio.

13. On or about March 12, 2013, conspirators caused two separate wire transfers of approximately $29,937.50 and $5,062.59 into the Citizens Bank account ending in #6452 that the conspirators fraudulently diverted from an investment management account in the name of S.A. (a real person whose identity is known to the United States Attorney).

14. On or about March 21, 2013, the conspirators sent an email from ikelo1010@yahoo.ca to zoba5k@yahoo.com with the subject line "Accounts[.]" The content of the email provided bank details for the Citizens Bank account ending in #6452 and two additional accounts at Citizens Bank and Chase controlled by the conspirators.

15. On or about April 1, 2013, the conspirators sent an email from rnip234@yahoo.com to ikelo1010@yahoo.ca with the subject "1[.]" The content of the email provided an attachment titled "sally2.jpg" which showed an online banking form. Also on or about April 1, 2013, the conspirators sent an email from rnip234@yahoo.com to ikelo1010@yahoo.ca with the subject line "2 sally… balance[.]" The content of the email included the image titled "sally.jpg" which showed an online banking screen shot showing account balances for two Ascension health accounts.

16. On or about April 30, 2013, conspirators sent an email from ikelo1010@yahoo.ca to adakaeze@gmail.com with the subject line "Escrow[.]" The content of the email provided bank details for the PNC Bank account ending in #1897.

17. On or about April 30, 2013, conspirators caused a wire transfer of approximately $6,000 into the Citizens Bank account ending in #6452 from a Wells Fargo bank account ending in 9829 in West Palm Beach, Florida.

18. On or about June 23, 2015, at the direction of Z.H., Defendant travelled with Z.H. and others to Atlanta, Georgia to open bank accounts in furtherance of the conspiracy.

19. On or about June 23, 2015, Defendant and others opened business checking accounts in the name of JHesse LLC at Wells Fargo (account ending in #9778) and BOA (account ending in #6580). Both accounts were opened at bank branches located in Atlanta, Georgia. After opening the accounts, Defendant and others provided the account information for both accounts to Z.H.

20. On or about September 2, 2015, Defendant texted Z.H. "********6580 Yea its opened[.]"

21. On or about October 2, 2015, conspirators fraudulently caused a law firm located in Pittsburgh, Pennsylvania to mail a check drawn on the firm's client trust account, maintained at PNC Bank, in the approximate amount of $65,000 (the "law firm check"), to a residential address in Youngstown, Ohio controlled by a co-conspirator.

22. On or about October 6, 2015, Defendant, at the direction of Z.H., deposited the law firm check into the Wells Fargo account ending in #9778 at a Wells Fargo branch located in Atlanta, Georgia.

### The Use of Interstate Wires in Furtherance of the Conspiracy

23. For the purpose of executing and attempting to execute the scheme and artifice to defraud described above, Defendant and others known and unknown to the United States Attorney caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, to and from the Northern District of Ohio and elsewhere. Such interstate wires included wire transfers of victim funds to bank accounts controlled by conspirators; email communications with victims; email communications, text messages, and text images between co-conspirators directing opening of accounts, passing account information, and directing movement of fraudulently obtained funds; telephone calls to financial institutions to inquire about accounts controlled by the conspirators; and accessing the internet to check balances in accounts controlled by the conspirators, including the following:

| Date of Wire | Description of Wire | Location Where Wire Initiated | Location Where Wire Received |
|---|---|---|---|
| April 30, 2013 | $6,000 wire transfer | Wells Fargo account ending in #9829, West Palm Beach, Florida | Citizens Bank account ending in #6452, Youngstown, Ohio |

All in violation of Title 18, United States Code, Section 1349.

The United States Attorney further charges:

## COUNT 2
**(Conspiracy to Commit Money Laundering, 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957, in violation of 18 U.S.C. § 1956(h))**

24. The factual allegations of paragraphs 1 through 4 and 7 through 23 of this Information are realleged and incorporated by reference as if fully set forth herein.

25. From in or around January 2013, and continuing through approximately December 2016, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant MARK GREGORY and others, known and unknown to the United States Attorney, did knowingly and intentionally combine, conspire, confederate, and agree together and with each other to knowingly and intentionally conduct and attempt to conduct a series of financial transactions affecting interstate commerce, which transactions involved the proceeds from a specified unlawful activity: that is, wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344, knowing that the transactions involved the proceeds of some form of unlawful activity, and (a) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and the control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and (b) knowing that they were engaging in a monetary transaction in criminally derived property of a value greater than $10,000 derived from said unlawful activity, in violation of Title 18, United States Code, Section 1957.

**Objects of the Conspiracy**

26. The objects of the conspiracy were as follows:

    a. to enrich Defendant and his co-conspirators;

    b. to conceal and disguise the fraudulent nature and character of the proceeds obtained from a scheme to commit wire fraud and bank fraud, and conceal the ultimate recipients of such proceeds; and

    c. to transfer $10,000 or more at a time of the proceeds obtained from a scheme to commit wire fraud and bank fraud for the foregoing purposes.

**Manner and Means of the Conspiracy**

27. The manner and means by which the conspirators sought to accomplish the conspiracy included, among others, the following:

    a. Conspirators obtained the proceeds of the scheme to defraud described in Count 1;

    b. Conspirators sent fraudulently obtained proceeds to and from multiple financial institutions, including institutions located overseas, to conceal and disguise the source of, and hinder efforts to locate, those proceeds;

    c. Conspirators caused the proceeds of the fraud scheme to be transferred, via multiple smaller transactions, out of the bank accounts that initially received the proceeds ("First Tier Accounts") to other bank accounts (i) in the names of fictitious shell companies, (ii) in the names of other business entities associated with real businesses controlled by persons associated with the scheme, and (iii) in the names of persons associated with the scheme (collectively, "Second Tier Accounts"), thereby creating the false appearance of legitimate business banking activity;

    d. Conspirators caused proceeds received by Second Tier Accounts to be transferred, via multiple smaller transactions, out of the Second Tier Accounts to other bank accounts also opened in the names of fictitious shell companies, sometimes located overseas, and real businesses controlled by persons associated with the scheme, (collectively, "Third Tier Accounts"), thereby creating the false appearance of legitimate business banking activity;

    e. Conspirators structured withdrawals of money from Second Tier Accounts and Third Tier Accounts to avoid federal reporting requirements;

  f.  Conspirators shared in the proceeds of the fraud schemes;

  g.  Conspirators caused proceeds received by Second Tier Accounts and Third Tier Accounts to be withdrawn in cash, which money the conspirators shared with other co-conspirators;

  h.  Conspirators caused proceeds received by Second Tier Accounts and Third Tier Accounts to be transferred via check to themselves and other co-conspirators;

  i.  Conspirators caused proceeds received by Second Tier Accounts and Third Tier Accounts to be used to make purchases on behalf of other co-conspirators;

  j.  Conspirator used the proceeds of the scheme to defraud to pay expenses related to travel they conducted to further the scheme; and

  k.  Conspirators traveled to bank branches located in different states to conduct transactions in accounts that had received fraudulently obtained funds.

## Acts in Furtherance of the Conspiracy

28. On or about March 12, 2013, Defendant, at the direction of Z.H., wire transferred approximately $23,900, which funds represented the proceeds of the scheme described in Count 1, from the Citizens Bank account ending in #6452 to Bank of Montreal account ending in #9696, in Regina Sask, Canada, which was controlled by the conspirators.

29. On or about March 22, 2013, Defendant, at the direction of Z.H., withdrew $5,000 cash from the Citizens Bank account ending in #6452 and split the money with Z.H.

30. On May 2, 2013, Defendant, at the direction of Z.H., withdrew $6,023 cash from the Citizens Bank account ending in #6452 and split the money with Z.H.

31. On May 16, 2013, the conspirators sent an email from ikelo1010@yahoo.ca to smithbagzona@yahoo.co.uk with the subject line "15k Alibaba[.]" The content of the email provided the name S.A. and the account number for the PNC Bank ending in #1897.

32. On or about June 18, 2013, Defendant, at the direction of Z.H., deposited approximately $36,000 cash, which funds were or Defendant thought to be the proceeds of the scheme described in Count 1, into the PNC Bank account ending in #1897. Defendant subsequently wire transferred approximately $36,000 to a Bank of China account ending in #4714 in the name of Hebei Hollywood Co. Ltd., located in Shijiazhuang, China.

33. On or about October 1, 2013, a co-conspirator delivered to Defendant a cashier's check in the approximate amount of $60,000, which funds represented the proceeds of the scheme to defraud described in Count 1, drawn on a Citizens Bank account controlled by the conspirators.

34. On or about October 7, 2013, Defendant deposited into the PNC Bank account ending in #1897 a cashier's check in the approximate amount of $70,000, which funds represented the proceeds of the scheme described in Count 1, drawn on a Citizens Bank account, controlled by the conspirators, in the name of K.L.

35. Between October 2, 2013 and December 23, 2013, Defendant, at the direction of Z.H., withdrew from the PNC Bank account ending in #1897 approximately $122,600 cash in structured withdrawals and gave most of the money to Z.H.

36. Between on or about October 6, 2015 and October 15, 2015, Defendant, at the direction of Z.H., travelled from Youngstown, Ohio to Atlanta, Georgia.

37. On or about October 15, 2015, Defendant, at the direction of Z.H., assisted a co-conspirator in withdrawing approximately $4,970 from the Wells Fargo account ending in #9778 in Atlanta, Georgia, which funds were the proceeds of the scheme to defraud described in Count 1.

38. On or about October 16, 2015, Defendant, at the direction of Z.H., assisted a co-conspirator in withdrawing approximately $7,000 from the Wells Fargo account ending in #9778 in Atlanta, Georgia, which funds were the proceeds of the scheme to defraud described in Count 1.

39. On or about October 16, 2015, at the direction of Z.H., Defendant assisted a co-conspirator in withdrawing approximately $47,000 from the Wells Fargo account ending in #9778 in Atlanta, Georgia in the form of a cashier's check made payable to another co-conspirator.

40. On or about October 17, 2015, Z.H. contacted BOA requesting information on BOA account ending in #6580.

41. On or about October 19, 2015, Defendant, at the direction of Z.H., assisted a co-conspirator in withdrawing approximately $5,500 from the Wells Fargo account ending in #9778 in Atlanta, Georgia, which funds were the proceeds of the scheme to defraud described in Count 1.

All in violation of Title 18, United States Code, Section 1956(h).

> DAVID A. SIERLEJA
> Acting United States Attorney
>
> *Ann C. Rowland*
>
> By:  ANN C. ROWLAND
> Deputy Criminal Division Chief